Okay, our last case is number 19-1148, Sirless West v. City of Albany. Ms. Wiley. Yes, good morning. May it please the court, I am Latonya Wiley and I represent the plaintiff appellant Sirless West. Reversal is proper in this case because the district court erred when she made a clear error of judgment by overly applying and overly interpreting the local rule regarding summary judgment motion. Here, the district court determined that plaintiff's response in opposition to defendant's statement of material facts in dispute were not allowed or permitted as a separate filing under the court's local rules. In so doing, the district court imposed the ultimate sanction against the plaintiff of striking that pleading and deeming all of the defendant's facts as being unopposed and omitted by the plaintiff. In that respect, Ms. Wiley, didn't the district court also do the same thing with the City of the extra filings made by the City as well? Yes, sir, the district court did. However, the harm to the plaintiff far exceeded the harm to the defendants in that instance. Because with respect to the plaintiff's opposition document, the court struck that in the deeming order the punishment for not responding and objecting to defendant's statement of facts is virtually that you've turned the case into an unopposed motion for summary judgment. Well, that's not exactly right because, I mean, I understand the argument about you being prejudiced to some degree, but the district court did have your statement of material facts, which it did consider. Well, your honor, I disagree with the fact that the court, if you look at the court's order, the lengthy order, the court makes specific references to all the facts that the court was deriving and basing its opinion on. The court nearly exclusively relies upon defendant's statement of facts. There is only scant reference to plaintiff's statement of facts, which is document 50-1 in the appendix. There may be two to three maybe cursory references to plaintiff's statement of facts. The vast and overwhelming majority of the court's opinion is utilizing the facts as presented by the defendants and as being unopposed by the plaintiff. That was so very harmful. It was a death nail to our case, your honor. But the district court, in trying to understand the argument you're making about prejudice in that respect, the district court found that you had met almost every element of your prima facie case with the exception of having a comparator and you don't challenge the comparator ruling on appeal. So what are we supposed to do with that? Well, your honor, I did challenge the comparator ruling on appeal because the comparator ruling dealt with Karen Tomlinson and the issue of the fact that Ms. West, the plaintiff, was recommended for termination by Ms. Brophy for alleged insubordination when her white counterpart had engaged in similar conduct of the same or virtually worse nature and was not disciplined. In fact, Ms. Brophy, the defendant, she said that she viewed the white employee's reaction to him refusing to heed to her directives as just being an employee being passionate and being a perfectionist. Yet when plaintiffs supposedly refused to move a cabinet or go into a room on the day of the file cabinet incident, that was disrespectful and warranted Ms. West being terminated. There was testimony from third-party witnesses which the district court failed to even consider that was in the statement of facts. There was an eyewitness third-party, Chad Arnold, who testified that he did not observe Ms. West being insubordinate. With respect to the white comparator, Karen Tomlinson, there is a third-party witness who said that he overheard that employee screaming and yelling at Ms. Brophy. In fact, Ms. Brophy herself acknowledged that the employee would get so angry and she would turn right in the face and just argue with her. The results of the discipline in that particular matter were very different. Also, the district court applied the nearly identical standard which this court has since rejected as being the proper standard when it regards to that. Do we have the ability to, since this is a de novo review, to do the appropriate review based on our current case law or do we need to remand it back for a first finding? That is a good question. I think either option would be available. I do know that Lewis was pending at the time this case was. In fact, the district court's ruling came out on the very same day that this court's ruling and Lewis came out on the same day just coincidentally. We cited Lewis in our response to the district court. We let the court know that there was a case under consideration that might have a direct impact on that. The district courts went ahead and but remand certainly would be proper because the standard was not applied appropriately in this case. Also, going back to the facts as deemed admitted by that punishment, your honors, it's baked in the cake. The inferences that Ms. West was entitled to as a respondent in motion for summary judgment, she was completely deprived of that right based upon a reasonable ruling, a reasonable interpretation of local court's rules that does not indicate that the response to a defendant's motions for summary judgment, the statement of facts cannot be done, accomplished by doing a separate pleading. It was never, ever the intention to act in blatant disregard of the court's rules. The rule is vague and looking at the other districts around, in the Southern District and the Northern District, they all have variations of this rule, their local rules on summary judgment, your honor, but certainly that was never the intention to be. Then that, I mean, but just speaking as a former district judge, that would have allowed both you and the city to file over a hundred pages. Well, the, the, I mean, you've got, you've got your memorandum of law on summary judgment. You've got your statement of material facts, and then you've got your document challenging the defendant's statement of facts. I mean, it seems reasonable to me to construe the local rules to not allow a party to file so much without leave. Well, on this material pleading, your honor, that's not a reasonable construction because that's the only construction. The defendants filed nine declarations or nine affidavits. They filed a 77 paragraph statement of material facts in dispute. There were over 10 depositions taken in this case. There were thousands of documents. So this was a very fact-intensive case, admittedly, your honor. So there were a lot of facts, but when the response that I filed, the objection, all I did was to take what the defendants did, their 77 paragraph document, and I thought I was doing something that would ease the burden of the court by just responding as the rules required to the non-movement to respond directly and to the defense, to the movement's responses and by paragraph. So I responded to their 77 paragraph pleading in light fashion. And, but there was no way to intertwine the plaintiff's statement of material facts in that particular pleading. Also, the district court also erred because the district court obviously construed the plaintiff's complaint as a shotgun pleading. And in her, in the order, she indicates that she was unable to determine what the allegations were and what the federal claims were. Well, and this court has said in SAC 5 micro versus Chabonet that a plaintiff, a party who has been, who has, who's alleged to have done, filed a shotgun pleading should be given the opportunity to replead. One opportunity, sua sponte by the court. The court did not do that here. Instead, the court, again, imposed the ultimate sanction of saying, I don't know what you're, what you're pleading. I don't know what allegations you're claiming. So I'm just going to only address the readily enumerated ones. And then I'm going to name all others abandoned. The retaliation claims in particular were dismissed by the court. And I believe that the court was going to view this as a shotgun pleading, which her order clearly says that there are the success, successive complaints, the successive paragraphs were being incorporated into all the three counts of each federal cause of action that the court should have been given that the plaintiff should have been given an opportunity to replead. All right, Ms. Wiley, thank you very much. You've saved your five minutes for rebuttal. Thank you. Mr. Devaney. Good morning, Your Honor. May it please the court. My name is Will Devaney and I represent the defendants, the city of Albany, Georgia, Tom Berry and Joellen Brophy. Uh, let me, uh, quickly address the procedural matter, Your Honor. One of the things that I think the court focused, the district court focused on was the parties not being concise. Um, Ms. Wiley referred to the fact that we filed 77 statements of material fact. We also incorporated those statements of fact by and large, I think all but about six in the statement of facts, and we had pages one through eight or one through nine of our brief contained a statement of facts. Ms. Wiley's statement of facts consisted of three lines, which in which she said, Ms. West incorporates plaintiff's statement of facts for which there are genuine issues to be tried. And as you pointed out, there were more than 200 of those. So indeed that even if you take out double spacing or something like that, you're still talking about maybe filing a document that would have been 40 pages as opposed to 20 pages. Although the district court, the district court criticized the filings, but the district court also said that she was going to consider everything in the record, right? That she did, Your Honor. And also she noted that, um, that many of the allegations that the plaintiff made in their statement of facts and her statement of facts were unsupported by the record. So the evidence, I think, I think the court, you know, again, we regret that the court didn't find our briefing helpful, but nevertheless, the court did undertake a complete review of the record, and I don't think her order shows anything but that. So, um, let me just address more of the, uh, uh, more of the merits. Well, can you, can you go back to Judge Brasher's last question? The district court's order seems a little inconsistent to me in one regard procedurally, and that is the court says that it's not going to consider the so-called extra filings of Ms. West and of the city, but then says I've looked at the entire record. So what does that mean? Did the court consider everything or did it consider everything except your, your extraneous filing and her extraneous filing? My interpretation of that, Your Honor, is that the court accepted everything, uh, not, I'm sorry, not accepted everything, but it, but took a look at the entire record because there are facts that we asserted that the court didn't incorporate or didn't address, and it seems to me that the court went back through that and just, and took a look at the record and to see whether they were supported or whether they were contradicted by the plaintiff's you know, I do, the court said that it, the district court said that it undertook a complete review of the record, and I don't think the order reflects that it did not do that, um, but I agree with you that that part there, um, I think she still determined of by hook and by crook that from all the pieces of paper that were filed what was in fact in dispute and what was not, and then determined whether that was relevant or not. Okay, same question, same question that I think Judge Lagoa posed to Ms. Wiley about Lewis, uh, do we conduct the sort of Lewis analysis for the comparator or do we remand for the district court to do that? I believe you're, the review of the court is de novo, so as I would understand it, your honor, is that you would be able to undertake an analysis of the, uh, comparator issue, and as Ms. Wiley noted, uh, that case, the Lewis versus City of East Point was in fact issued on the same day, um, that, uh, that the court issued its order, but I also think, your honor, with respect to the comparator that in light of the fact that Mr. Berry made his own decision as to, uh, Ms. Brophy's recommendation for, uh, termination, that that would not, that would not be necessary. I think he could affirm it on the grounds that he, he would have made the decision that he made, and he did it, and he did it independently. But, um, just briefly, your honor, so the plaintiff brought this action alleging a pattern and practice of race discrimination. She failed to show any such pattern or practice, and moreover, she failed to show that she herself suffered any race discrimination. She also failed to show a violation of the Georgia Whistleblower Act, and failed to plead or assert actionable claims of retaliation, uh, under any other statute, and therefore the district court properly entered summary judgment on that. Uh, the plaintiff's appeal, uh, your honor, uh, on the federal claims in this point are really based on the retaliation claims that she did not properly assert, and out, alleged discriminatory personnel actions that she didn't defend against in responding to the defendant's motion for summary judgment. Um, and to address Ms., uh, Ms. Wiley's point on the retaliation claims, I don't think it was because of the shotgun pleading. The, the counts are, are explicitly labeled. Count one is labeled race discrimination and retaliation. Count two is labeled race discrimination. Count three is labeled race discrimination. Counts two and three do not does include the word retaliation. So I don't believe that this is a shotgun pleading sort of analysis, but this is what plaintiff labeled her causes of action as, and we moved for that on summary judgment, your honor, and the plaintiff did not respond to that. We made that argument, and the plaintiff just did not respond to it. Um, she just tried, she didn't respond at all to the 1981 argument, and she just tried to assert the Title VII claim without acknowledging our argument that it hadn't been pled. And of course, count one, which is the retaliation claim that she asserted pursuant to the Equal Protection, uh, Act, uh, or clause rather that was not, um, that is not actionable under law, and I don't think the plaintiff contends that it is on, on appeal. Um, the plaintiff does not claim that Ms. Barofi used any racial slurs or epithets. Instead, plaintiff attempts to rely on a history of various employment actions as evidence of alleged discrimination, but the defendants expressly moved for summary judgment on the alleged discriminatory denial of promotions with respect to Ms. LeMay, Mr. Pera, and, uh, Karen Tomlinson, and the plaintiff failed to respond to those arguments in her response on summary judgment on the plaintiff's claims that, uh, the plaintiff had been required to train white co-workers, and the plaintiff didn't respond to that argument either, Your Honor. And finally, the plaintiff, we also moved the defendants, that is, on plaintiff's assertion of a hostile work environment claim, and again, the plaintiff didn't assert, didn't oppose that in the motion for summary judgment or offer any opposition in the response brief. So at this point, Your Honor, and the defendant properly supported each of those claims, Your Honor, we offered the declaration, among other things, we offered the declaration of Derek Brown, who had been the plaintiff's manager before plaintiff came under Ms. Barofi's supervision, and like, like the plaintiff, Mr. Brown is African American, and he testified to the qualifications of the various individuals selected, and indeed, sometimes even his own participation and recommendation of those individuals for promotion. And Mr. Brown also testified that the plaintiff did not have the training or knowledge to perform the primary duties of certain other persons that she had identified in the complaint, and that's Mr. Shippey, Ms. Carson, and again, Karen Tomlinson. So our motion was properly supported in that regard, and it was not properly opposed or opposed in any way by the plaintiff in her response in opposition. So we respectfully submit, Your Honor, that that part of the court's order should preclude the consideration of plaintiff's reliance on those acts in terms of her discrimination claim as it would relate to, say, the transfer or the recommendation for promotion. But I can address those, I can address those issues more fully if the court, if the court would require. I would simply point out in a lot of respects that Ms., Ms. Tomlinson, the plaintiff does not contend that Ms. Newton, who was her former supervisor, for example, that it was a former supervisor, she does not, plaintiff does not claim that she retaliated or discriminated against, against the plaintiff. And with regard to Ms. Tomlinson's promotion or appointment as a grant accountant or grant, grant manager, not the grant manager, but the grant accountant, that was Ms. Tomlinson's, I'm sorry, that was Ms. Newton's recommendation or that was her decision to make that. And the plaintiff in her brief has tried to disparage Ms. Tomlinson by simply referring to her as a secretary. But the fact of the matter is that Ms. Newton, well, the plaintiff first testified that she, she assumed that there were other duties that Ms. Tomlinson performed. And Ms. Tomlinson was making $39,000 a year when she was the, classified as the administrative assistant to Ms. Newton. And she received a 41, and she received a $2,000 promotion when she became the grant accountant, the $41,000. It was a 5% raise. And the plaintiff at the same time, what she was complaining about was this senior accounting tech position that she got. But plaintiff actually got a 10% raise, a three, roughly a $3,000 raise. It's $2,999. She, she actually got a bigger raise for what the plaintiff contends in her, in her deposition was really just doing the same job that she had done before. And clearly Ms. Tomlinson was taking on some additional duties, but whatever benefit Ms. Tomlinson had gained, it had been under Ms. Newton. She was being paid $39,000 a year under Ms. Newton. And again, the plaintiff doesn't claim that Ms. Newton discriminated or retaliated against her in any way. Mr. Devaney, could you touch upon in the time you have left the whistleblower claim and Ms. West's contention with regard to the discovery and protective order issues on that claim? Sure. With regard to the whistleblower claim, Your Honor, the court conducted a hearing, the district court conducted a hearing, asked the parties to get together to try to resolve the issues as it related to a 30B6 deposition. And we were able to come to agreement as to all but two subject matters. And those were then presented by way of a denied our motion with respect to one and granted it with respect to another. But the plaintiff never really responded to our opposition related to the fact that they were not stated that the one that we ultimately prevailed on was not stated with reasonable particularity. And so the court ruled on that ground. Ms. Wiley, or the plaintiff in this case, did not really address that. She stood her ground and said, no, we want it exactly the way it was. And the district court didn't really leave the district court, didn't suggest to the district court some compromise or some area to meet in between. And that was the reason for the motion was just that it wasn't stated with reasonable particularity. It was overly broad. And it was something that a 30B6 deponent could not be reasonably prepared on. Do you recall what that subject matter was as phrased? Lisa, I can. The subject number seven, subject matter number seven, your honor stated, quote, information pertaining to any external audit, internal audit, investigation, analysis or review of any financial procedures, financial protocols, financial irregularities involving any and all tellers at Water, Gas and Light from January 1, 2014. And again, the plaintiff stood by that and did not budge off of that very broad, very broad analysis. And one of the things that we had pointed out, among other things, your honor, was that, that there were regular reviews of the tellers in the district court. And so the fact of the matter is that, you know, it just wasn't stated with enough reasonable particularity that we were going to be able to review, that we were going to be able to prepare a witness for that. And the district court agreed. And the plaintiff really didn't leave the court with much of an option as to what to do in terms of in terms of brokering some sort of acceptable middle ground. Okay, thank you. Your honor, if I may, can I address the cats? I just wanted to address the cat's paw and with respect to Mr. Berry in my, in my time. Since the case, since the case was decided, your honor, the Supreme Court has decided in that, but for is a requirement for reliability under section 1981. And that's in the Comcast Corporation versus National Association of African American Known Media. And the fact is that Mr. Berry did perform an independent investigation. There was no mention of race or no mention of Ms. Tomlinson in the three and a half page statement that the plaintiff had submitted to Mr. Berry for his review. And Mr. Berry was really then left with the situation of having to review the relationship between these two individuals. And if Mr. Berry is being attacked for the manner, the manner in which he conducted his investigation and resolve the issue, there must have been some signal to him that it was more than just a manager subordinate issue. And I've run out of time, your honor. Thank you for your All right. Thank you very much, Mr. Devaney. We really appreciate it. Ms. Whitey, you have your five minutes. Yes, sir. First, and I'll start with the Georgia whistleblower. I'll work backwards, your honor. Ms. West, when, when she was demoted and sent to the teller's office, she discovered right away that there were serious breaches in protocol, having been an internal control accountant herself. And what she did was she, when she discovered those, her drawer, actually her till came up short twice. $20 was missing. And then $100 was missing from her till. And she was written up for that. In response to being written up for that, she said, listen, there's a problem here. There is money missing because you all are having tellers leave the station and not stay with their money. Money is unsecure, and this is public funds. And then these breaches are causing the loss of public funds. As soon as she sent that letter, as soon as she sent that, they retaliated against her. She was fired three days later. She had a pending evaluation by Gwendolyn Williams on page 54 of the continuation deposition of Gwendolyn Williams, who testified that Ms. West had been getting positive reviews the entire time she was in the department. And, but when she filed the notice that, hey, there are protocols here causing the money to be missing and stolen from my drawer, the supervisor Williams changed all of her, changed four of her evaluation criteria from highly effective to ineffective. And admits that in her deposition, she said, I changed it after she filed her notice. And then she was- I know, but the district court said that whatever Ms. West had complained about or brought to the attention of her supervisors did not have to do with noncompliance of a law, rule, or regulation. And that's the error, your honor. And thank you for saying that. I was going to get to that. That's the error of it. Ms. West's complaints were not about violation of internal rules of policy. She was- the heart of her complaint was the theft, the loss of public funds. And we were able to extract some information about the nature and extent of that problem, but the district court hamstrung us and said, no, you can't ask any information about the investigations of tellers and their misappropriation of funds. There was a teller shortage. And Ms. West, after she was terminated, there was two, three thousands of dollars missing, criminal investigations open. This happened after she was terminated. However, the district court would not allow us to go into that and then penalize us further by saying, you never really proved that there was a theft problem here. So- No, but the district court, but I know you disagree, but the district court also said that with regards to the teller shortages and the theft of public funds, you didn't point to a law statute or regulation that was being violated through noncompliance. Well, your honor, the Georgia whistleblowers statute does not require that. And theft is theft. Theft of money is theft of money. There is a federal case on the Southern District that we in our original brief to this court, where the Southern District judge said, the Georgia whistleblower law doesn't require anyone to cite a specific statute. Theft is theft. Theft of public money is theft of public money. And whether or not the plaintiff cited the criminal code as part of her disclosure, it was not, or that we were required to do so, belies the fact that the purpose of the Georgia whistleblower act is to alert to fraud, waste, abuse, and theft of resources. That is exactly what Ms. West did. And she was penalized for it. Three days later, they terminated her. They changed her evaluations from positive to negative, and they terminated her for having supposedly a bad attitude. The same thing that three weeks later, she was accused of insubordination, and she was terminated. And asked for the hearing that Mr. Berry did. Mr. Berry did not do an independent hearing. When he did a sham of a hearing, he testified that he didn't know anything more than, he testified that he had demoted plaintiff based upon an inarticulable act of insubordination. He said, I knew far less about what happened on the day of this alleged file cabinet incident after the hearing than I did before. He didn't ask a single question. Ms. Brophy did not testify, did not utter a word. No one did an independent investigation. And in fact, after the hearing, Ms. Brophy went to him and said, don't bring her back. When it was insufficient basis to terminate her, she still guided his hand and told him, I don't want her back in this department. And that's why she was demoted and sent to the teller's office, teller's department. All right, Ms. Wiley, thank you very much. Mr. Devaney, thank you both very much for your arguments. We really do appreciate them. Thank you. Have a good day. All right. We are in recess until tomorrow morning. Thank you.